**YOLANDA ADAMS, Plaintiff**

**v.**

**THE NORTH WEST COMPANY (INTERNATIONAL), INC., d/b/a COST
U LESS, and CULUSVI, INC. d/b/a COST-U-LESS, Defendants**

Civil No. SX-14-CV-236

Superior Court of the Virgin Islands

Division of St. Croix

October 6, 2015

427

429

430

431

432

433

435

MARY FAITH CARPENTER, ESQ., Lee J. Rohn and Associates, LLC, Christiansted, St. Croix, USVI, *Attorney for Plaintiff.*

KYLE R. WALDNER, ESQ., Quintairos, Prieto, Wood & Boyer P.A., Miami, FL, *Attorney for Defendants.*

MOLLOY, *Judge*

## MEMORANDUM OPINION

(October 6, 2015)

**THIS MATTER** comes before the Court on the following motions: (1) Defendant CULUSVI's Motion to Dismiss Plaintiff Yolanda Adams' ("Adams") Complaint filed on July 22, 2014;[1] (2) Defendant The North West Company (International), Inc.'s ("North West") Motion to Dismiss Plaintiffs Complaint filed on August 13, 2014;[2] (3) Adams' Motion to Amend Complaint filed on August 29, 2014;[3] and (4) North West's Motion to Strike "Plaintiffs Reply in Support of her Motion to Amend Complaint," or in the Alternative, Motion for Leave to File Sur Reply, filed on January 7, 2015.[4]

---

[1] Adams filed an opposition on August 29, 2014, and CULUSVI filed a reply in support of their motion to dismiss on September 18, 2014.

[2] Adams filed an opposition on August 29, 2014, and North West filed a reply in support of their motion to dismiss on October 14, 2014.

[3] Defendants filed an opposition on October 14, 2014, and Adams filed a reply to the opposition on November 20, 2014.

[4] Adams filed an opposition on January 26, 2015, and North West filed a reply in support of its motion to strike on February 18, 2015.

For the reasons that follow, the Court will grant the Defendants' motions to dismiss, grant Adams' leave to file a curative amendment to her complaint, grant Adams' Motion to Amend Complaint, deny in part and grant in part North West's motion to strike or file a sur-reply, and grant the parties leave to conduct jurisdictional discovery pursuant to Defendants' factual challenges to Adams' amended complaint after Adams files the curative amendment to her complaint.

## I. BACKGROUND

Adams initiated this matter by filing a complaint on June 6, 2014. Therein, she alleges that due to Defendants' negligence in maintaining the Cost-U-Less store on St Croix — specifically, because of their negligence in stacking pallets and boxes on shelves — boxes fell off of a top shelf and hit her head and body, injuring her, while she shopped. Compl. ¶¶ 6-10. Adams alleges that as a result of the boxes falling on her head and body, she suffered physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering, and loss of enjoyment of life. *Id.* at ¶ 10. She further alleges that, upon information, Defendants have a history of improperly stacking pallets and/or merchandise, that they knew of the problems and the negligence of their employees, but failed to remedy or warn of the situation. *Id.* at ¶ 11. She seeks compensatory damages, punitive damages, pre and post judgment interest, costs and fees, "and for such other relief as this court deems fair and just." *Id.* at 2.

On July 22, 2014, CULUSVI filed a motion to dismiss alleging that Adams has failed to state a plausible claim of negligence upon which relief can be granted. Def. CULUSVI's Mot. to Dismiss Pl's Compl. 4-10. CULUSVI also argues that Adams' allegation of punitive damages and request for attorney's fees must be stricken. *Id.* at 10-12. North West filed its own motion to dismiss on August 13, 2014; therein, North West alleges that this Court lacks personal jurisdiction over it, and also asserts identical arguments as did CULUSVI in regards to Adams' failure to state a plausible claim on negligence, punitive damages, and attorney's fees.

Adams filed her motion to amend on August 29, 2014, and therein seeks to amend the complaint to add facts learned during discovery[5] to support personal jurisdiction over North West and to supplement her allegations showing North West's control over the Cost-U-Less store in St. Croix, the place of Plaintiffs accident. Pl's Mot. to Am. Compl. at 1.

## II. DISCUSSION

### A. Motions to Dismiss — Rule 12(b)(6)

■ Under Federal Rule of Civil Procedure 12(b)(6), a defendant can move to dismiss a claim because the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).[6] "The adequacy of the complaint is governed by the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure." *Brady v. Cintron*, 55 V.I. 802, 822 (V.I. 2011). Rule 8 requires that a pleading contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, the rule also requires that the complaint must have "enough factual matter (taken as true) to suggest the required element(s)" of the claim. *Robles v. HOVENSA, LLC*, 49 V.I. 491, 501 (V.I. 2008). The facts alleged in the pleadings, and any inferences drawn therefrom, must be viewed in the light most favorable to the plaintiff. *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 566 (V.I. 2012).

■ The Court must perform a three-step analysis to determine whether a complaint can survive a 12(b)(6) motion. *Brady*, 55 V.I. at 823. The Court must: 1) note the elements that must be pled to sufficiently state a claim; 2) identify allegations that are not entitled to the assumption of truth because they are no more than mere conclusions; and 3) assume the veracity of well-pleaded factual allegations and then determine whether they could plausibly establish entitlement of relief. *Id.* Allegations that are not entitled to an assumption of truth "can take the form of either legal

---

[5] The discovery that Adams cites was conducted in the District Court, where this matter was originally filed. This matter had to be re-filed in the Superior Court after the District Court required that CULUSVI be joined as a non-diverse defendant, thus defeating the diversity necessary for federal court jurisdiction. Pl's Reply in Further Supp. of Her Mot. to Am. Compl. at 15.

[6] Federal Rule of Civil Procedure 12 is applicable to the practice and procedure of the Superior Court through Rule 7 of the Rules of the Superior Court.

conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement." *Id.*; *see also Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2011). If there are facts sufficient for the court to "draw a reasonable inference that the defendant is liable based on the elements . . . then the claim is plausible." *Joseph*, 54 V.I. at 650. The Court will not assume that "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

■ If a complaint is subject to a Rule 12(b)(6) dismissal, the Court must permit a curative amendment unless such an amendment would be inequitable or futile. *Benjamin v. Bennerson*, 2012 V.I. LEXIS 7, *7 (V.I. Super. Ct. Feb. 13, 2012); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Moreover, the Court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Benjamin*, 2012 V.I. LEXIS at *7.

### 1. Adams' Complaint Fails to Allege a Plausible Claim for Negligence

■ In their motions to dismiss, Defendants argue that Adams' complaint fails to allege a cause of action for negligence. Def. CULUSVI's Mot. to Dismiss Pl's Compl. 5-9; Def. North West's Mot. to Dismiss Pl's Compl. 9-14. To establish a claim of negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the defendant's negligence caused the plaintiff's injury. *Brady*, 55 V.I. at 823.

Defendants' motions to dismiss allege that Adams' complaint is "truly devoid of any factual content whatsoever," and specifically point to the following allegations in her complaint as being conclusory: "Plaintiff was a business invitee of the Defendants." Compl. at ¶ 6; "Defendants' store was in an unsafe condition to include but not be limited to pallets stacked in a negligent manner on top shelves." Compl. at ¶ 7; "Upon information, Defendants have a history of improperly stacking pallets and or merchandise, knew of the problems and the negligence of its employees in stocking the shelves, but failed to remedy the situation or to warn of the situation." Compl. at ¶ 11; "As a result, Plaintiff suffered physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of life, all of which are

expected to continue into the foreseeable future." Compl. at ¶ 10. Def. CULUSVI's Mot. to Dismiss Pl's Compl. 4; Def. North West's Mot. to Dismiss Pl's Compl. 8-9. The Court will also examine Adams' assertion that, "[b]ecause of the negligent stacking of the pallets, one of the pallets fell from the third shelve [sic] up, and all of the boxes on the pallet also fell." Compl. at ¶ 18.

The Court agrees with Defendants that the bulk of Adams' original complaint contains allegations that do not warrant an assumption of truth because they are legal and factual conclusions. Firstly, Adams' statement in Paragraph 7 that the store was in an "unsafe" condition is a naked factual assertion devoid of necessary further factual enhancement that cannot warrant an assumption of truth. Also in Paragraph 7, Adams states that the pallets were stacked in a "negligent" manner; this statement comprises a legal conclusion — indeed, the very object of this action is to determine whether Defendants' behavior was, in fact, negligent — and thus, this cannot warrant an assumption of truth. Thirdly, while Adams' allegation of knowledge on the part of Defendants in Paragraph 11 is acceptable, her allegation that they "knew of . . . the *negligence* of its employees," comprises a legal conclusion. Similarly, Adams' assertion in Paragraph 8 that the pallets fell because they were "negligently stacked," comprises a legal conclusion. Accordingly, the aforementioned allegations, as a naked factual assertion and legal conclusions, do not warrant a presumption of truth.

However, the Court does not agree that Adams' allegation that she was a "business invitee" in Paragraph 6 is an impermissible legal conclusion, as she demonstrates that she has satisfied the requirements to be considered a "business invitee" in the same paragraph when she states that she had "gone to the Cost-U-Less store in St. Croix to shop."[7] Additionally, the Court disagrees that Adams' statement that she "suffered physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of

---

[7] The Virgin Islands no longer recognizes the common-law categorizations of entrants onto land, such as business invitee and trespasser. *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 385-386 (V.I. 2014). Rather, in *Machado*, the Supreme Court of the Virgin Islands held that: "[T]he soundest common law rule for the Virgin Islands is . . . that the foreseeability of harm is the touchstone of the existence of [a land possessor's] duty of reasonable or ordinary care, [hereby extended] to all premises liability actions. *Id.* at 386 (internal citation omitted).

life, all of which are expected to continue into the foreseeable future," are "labels and conclusions" under *Twombly*. Combined with her statement that "[s]everal of the falling boxes hit Plaintiff in her head and body" in Paragraph 9, Adams has established the factual threshold necessary for a presumption of truth. Accordingly, these two statements will be considered with a presumption of truth.

In order to discern whether Adams has stated a plausible claim for negligence, the Court first analyzes whether Adams has pled facts that establish that defendants owed her a legal duty. Adams alleges that she was a "business invitee" of CULUSVI because she went "to the Cost-U-Less store in St. Croix to shop." Compl. ¶ 6. The Supreme Court of the Virgin Islands has stated that a proprietor of a store "owes a duty of care to its customers to exercise reasonable care to keep the store in a reasonably safe condition for the contemplated uses thereof." *Bright v. United Corp.*, 50 V.I. 215, 223 (V.I. 2008); *see also David v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984). However, a business owner is only liable for dangerous conditions of which he had actual or constructive notice: "An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." *David*, 740 F.2d at 236 n.6, *quoting* RESTATEMENT (SECOND) OF TORTS § 343 comment d (1965); *see also Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 529-530 (V.I. 2013) ("To establish that [property owner defendants] breached their duty to protect [plaintiffs] against a dangerous condition, the [plaintiffs] had to show that [defendants] had actual or constructive notice of the condition, and that they should have realized this condition involved an unreasonable risk of harm."). In the Virgin Islands, in order to show constructive notice, plaintiffs are required to "demonstrate that the condition existed long enough before the injury that the possessor should have discovered it in the exercise of reasonable care." *Perez*, 59 V.I. at 530. Accordingly, because Cost-U-Less is a business in which Adams was a customer, and, removing the conclusory statements, she states that the Defendants had a "history" of their behavior, "knew of the problems," and "failed to remedy the situation or to warn of the situation," Compl. at ¶ 11, her original complaint pleads facts sufficient to indicate that CULUSVI owed her a duty. However, Adams' original complaint contains no facts to

441

indicate that North West was the owner or proprietor of Cost-U-Less, or that North West could plausibly have possessed actual or constructive knowledge as to the condition of the store; as such, she has not pled facts sufficient to establish that North West owed her a duty.

■ Next, the Court must analyze whether Adams' original complaint contains facts sufficient to establish that CULUSVI breached its duty to exercise reasonable care to keep the store in a reasonably safe condition for the contemplated uses thereof. Adams alleges that Defendants breached their duty to her because their "store was in an unsafe condition to include but not be limited to pallets stacked in a negligent manner on top shelves," and that "[d]efendants have a history of improperly stacking pallets and or merchandise, knew of the problems and the negligence of its employees in stocking the shelves, but failed to remedy the situation or warn of the situation." Compl. ¶¶ 7, 11. However, the conclusory allegations that the store was "unsafe" and that the pallets were stacked in a "negligent" manner do not warrant a presumption of truth. Accordingly, the Court does not find that Adams' original complaint has presented facts sufficient to find that CULUSVI breached its duty to Adams.

■ Assuming, *arguendo*, that Adams had, in fact, pled facts to establish that Defendants breached a duty of care that they owed to her (which she did not), she would need to demonstrate that the breach of this duty caused her injury. To establish "causation," a plaintiff must demonstrate both cause in fact and proximate cause. *Brady*, 55 V.I. at 823. "In order for the negligent act to be regarded as the cause in fact of the injury, it must be shown that the injury would not have occurred but for the act." *Id.* at 823-4. If multiple acts could have caused the injury, the plaintiff must demonstrate that the alleged negligent conduct was a substantial factor in causing the harm. *Id.* at 824.

In order to establish causation, Adams alleges that, "[b]ecause of the negligent stacking of the pallets, one of the pallets fell from the third shelve [sic] up, and all of the boxes also fell . . . Several of the falling boxes hit Plaintiff in her head and body." Compl. ¶¶ 8-9. Striking Adams' conclusory use of the term "negligent," her allegation would be: "because of the stacking of the pallets . . . [s]everal of the falling boxes hit Plaintiff in her head and body." Reading these facts in light most favorable to Adams, the Court finds that she has pled facts that, had she established that Defendants owed her a duty and breached that duty, would establish causation.

442

■ Finally, in order to successfully plead a claim for negligence, a plaintiff must plead facts that establish that she was damaged by the Defendant's act. In her Complaint, Adams alleges that "Plaintiff suffered physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of life, all of which are expected to continue into the foreseeable future." Compl. at ¶ 10. Here, had Adams successfully established duty, breach, and causation, she would have established that she suffered damages due to Defendants' negligence.

Nonetheless, Adams has failed to allege plausible facts to establish that North West owed her a duty of care. Adams has also failed to allege facts to establish that CULUSVI breached its duty of care. Accordingly, Adams' complaint fails to state a plausible claim for negligence as to either Defendant.

## 2. Because Adams' Complaint Fails to State a Claim for Negligence, it Likewise Fails to Establish Entitlement to an Award of Punitive Damages

■ Additionally, Defendants' motions to dismiss allege that Adams has failed to plead facts that demonstrate that she is entitled to an award of punitive damages under Virgin Islands law. A plaintiff seeking punitive damages must demonstrate "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Marian v. Fraser*, 2014 V.I. LEXIS 19, *9 n.22 (V.I. Super. Ct. Mar. 17, 2014), *quoting* RESTATEMENT (SECOND) OF TORTS § 908(2). "The primary purpose behind punitive damages, compared to nominal or compensatory damages, is to punish the tortfeasor for 'outrageous conduct' and to further deter him and others like him from similar conduct in the future." *Powell v. Chi-Co's Distrib.*, 2014 V.I. LEXIS 21, *6 (V.I. Super. Ct. Apr. 3, 2014) (internal citation omitted). Punitive damages are an additional award that should only be granted in exceptional circumstances. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.").

The Superior Court has declined to award punitive damages on the basis that the defendant did not act with sufficient outrageousness to merit punitive damages when a defendant negligently designed a piece of equipment, knowing that the equipment would likely injure the user, *see Bertrand v. Cordiner Enters.*, 2013 V.I. LEXIS 67, *28 (V.I. Super. Ct. Nov. 15, 2013). Similarly, in *Powell*, the Superior Court declined to award punitive damages when a plaintiff pled only that a defendant maintained a staircase in a "dangerous" condition, *see* 2014 V.I. LEXIS 21, *9-10 ("[T]hese alleged 'failures to act' do not demonstrate conduct showing Defendant had a conscious indifference to the safety of individuals walking on the stairs."). Likewise, in *Johnson*, the Superior Court refused a plaintiff punitive damages when her allegation that Defendant failed to maintain a rug in a safe condition did not establish the requisite "evil motive" or "reckless indifference to the rights of others." *Johnson v. Marriott Hotel Mgmt. Co. V.I.*, 2013 V.I. LEXIS 46, *5-6 (V.I. Super. Ct. June 17, 2013).

██ A request for punitive damages is not an independent cause of action, *see Molloy v. Independence Blue Cross*, 56 V.I. 155, 176 n.5 (V.I. 2012), but is a claim incidental to another cause of action. *See Anthony v. FirstBank V.I.*, 58 V.I. 224, 227 n.4 (V.I. 2012); *Olive v. deJongh*, 57 V.I. 24, 49 (V.I. Super. Ct. 2012) ("A claim for punitive damages is not itself a cause of action, but is a remedy incidental to another cause of action, such as a tort."); *see also Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) ("Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action.").

██ ██ To demonstrate reckless indifference to the rights of others, Adams states that, "[u]pon information, Defendants have a history of improperly stacking pallets and or merchandise, knew of the problems and the negligence of its employees in stocking the shelves, but failed to remedy the situation or to warn of the situation." Compl. at ¶ 11. The Court does not find that this statement meets the threshold of outrageousness or evil motive necessary to establish entitlement to an award of punitive damages. *Bertrand, Powell*, and *Johnson*, while not binding on this Court, establish that entitlement to punitive damages requires something more than knowledge of, and failure to act on, possibility or probability of injury on the part of the defendant, and the Court agrees with this principle. Additionally, even if Adams pled facts to establish an entitlement to punitive damages, a punitive damages claim is

444

not an independent cause of action, and, as discussed above, Adams has failed to plead facts sufficient to establish the requisite underlying negligence claim. Accordingly, Adams' complaint does not plead facts sufficient to state a plausible entitlement to punitive damages.

### 3. The Court Will Not Strike Adams' Request for Attorney's Fees Because it is Too Early to Know if the Complaint or Defense is Frivolous

 In her plea for relief, Adams requests, "costs and fees," in addition to other damages. Defendants allege that Adams is not entitled to attorney's fees because, under 5 V.I.C. § 541(b), a party may not collect attorney's fees in a personal injury case unless the Court finds that the complaint or defense filed is "frivolous." The statute defines "frivolous" as "without legal or factual merit; or . . . for the purpose of causing unnecessary delay; or . . . for the purpose of harassing an opposing party." 5 V.I.C. § 541(c). At this early stage, the Court does not find that Plaintiff's Complaint, or Defendants' defenses, which have yet to be filed, are "frivolous."[8] Accordingly, the Court will not strike Adams' request for attorney's fees at this time.

### 4. The Court Will Allow Adams Leave to File a Curative Amendment

 Although Adams' complaint fails to state a plausible claim for negligence, Third Circuit precedent adopted by the Superior Court of the Virgin Islands mandates that "if a complaint is subject to a Rule 12(b)(6) dismissal a . . . court must permit a curative amendment unless such an amendment would be inequitable or futile. Moreover . . . [a] court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Benjamin v. Bennerson*, 2012 V.I. LEXIS 7, *7 (V.I. Super. Ct. Feb. 13, 2012), *quoting Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000). In addition,

---

[8] "While 5 V.I.C. § 541(b) generally does not provide for the recovery of attorney's fees in a personal injury action, attorney's fees may be awarded if, at the time of judgment, the Court determines that the complaint or a defense is 'frivolous' within the meaning of 5 V.I.C. § 541(c)." *Johnson v. Marriott Hotel Mgmt. Co. V.I.*, 2013 V.I. LEXIS 46, *7 (V.I. Super. Ct. June 17, 2013).

it is the preference of this Court, in accordance with precedent from the Supreme Court of the Virgin Islands, that cases be resolved on their merits. *See Joseph*, 54 V.I. at 650 ("Both this Court and the United States Supreme Court have recognized that there is a strong preference for trial courts to decide doubtful cases on their merits rather than dismiss them for a failure to strictly follow purely procedural rules."). The Court will accordingly allow Adams leave to amend her complaint to cure the aforementioned defects.

## B. Motion to Dismiss for Lack of Personal Jurisdiction — Rule 12(b)(2)

In its motion to dismiss, North West alleges that Adams' complaint must be dismissed because she has not pled facts sufficient to demonstrate that this Court may exercise personal jurisdiction over North West. On August 29, 2014, Adams filed an opposition to North West's motion to dismiss,[9] and therein alleges that North West consented to personal jurisdiction in the Virgin Islands when it participated in discovery in this matter when it was pending in the District Court, before it was removed to this Court, and because her amended complaint pleads facts sufficient to support a finding of personal jurisdiction over North West. Because North West's 12(b)(2) motion to dismiss focuses on Adams' original complaint and Adams filed her motion to amend before the Court ruled on North West's 12(b)(2) motion, and therefore, she could not have possibly known whether or how her original complaint is deficient regarding personal jurisdiction over North West, the Court considers Adams' original complaint below, and discusses her motion to amend in the following section.

Personal jurisdiction is "the authority of a court to exercise jurisdiction over a party before it." *Molloy v. Independence Blue Cross*, 56 V.I. 155, 172 (V.I. 2012). This Court may exercise personal jurisdiction over an out-of-state defendant only when the plaintiff has satisfied the requirements of the long-arm statute and the exercise of personal jurisdiction satisfies the requirements of due process. *St. Croix, Ltd. v.*

---

[9] The Court notes that Adams' opposition to North West's motion to dismiss is 24 pages long, and that Adams did not file for leave to file a brief in excess of 20 pages, as required by LRCi 7.1(d). The Court expects that the parties will abide by the rules of this Court, as further failure to comply may result in sanctions.

*Shell Oil Co.*, 60 V.I. 468, 474 (V.I. 2014). "A defendant may challenge a court's exercise of personal jurisdiction in a pre-answer motion under Federal Rule of Civil Procedure 12(b)(2)." *Molloy*, 56 V.I. at 172. In deciding a facial challenge to personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1992).

▆ A court may evaluate facts pled in the complaint supporting jurisdiction by holding an evidentiary hearing or by ordering the parties to conduct jurisdictional discovery. *Molloy*, 56 V.I. at 172-73. If a court elects to hold an evidentiary hearing, a plaintiff must demonstrate, by preponderance of the evidence that the trial court may exercise personal jurisdiction over the defendant. *Id.*, at 172. However, if a court does not elect to hold an evidentiary hearing to determine personal jurisdiction, the plaintiff is only required to establish a prima facie case for personal jurisdiction. *Id.* (internal citations omitted). Under this standard, the plaintiff has the burden to demonstrate every fact required to satisfy both the Virgin Islands' long-arm statute and the Due Process Clause of the Constitution. *Id.* In evaluating whether the plaintiff has established a prima facie case of personal jurisdiction over the defendant under this standard, this Court must "accept as true all of plaintiff's factual allegations that are supported by affidavits or other competent evidence which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor." *Id.* at 173.

### 1. Adams' Original Complaint Pleads No Facts That Could Reasonably Support Personal Jurisdiction Over North West

▆▆ To establish personal jurisdiction over North West, Adams must first demonstrate that its contacts with the territory satisfy the requirements of the Virgin Islands' long-arm statute. Sections 4903(a)(1) and (a)(3) of the Virgin Islands' long-arm statute are the most relevant to the exercise of personal jurisdiction over North West, and they state:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> (1) transacting any business in this territory; . . .
>
> (3) causing tortious injury by an act or omission in this territory;

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

5 V.I.C. § 4903. As to section 4903(a)(1), "transacting any business in this territory has been defined as a term of art which means less than doing business but more than performing some inconsequential act. It requires that a defendant engage in some type of purposeful activity within the territory." *Molloy*, 56 V.I. at 176, *quoting C & C/Manhattan v. Sunex Int'l, Inc.*, 42 V.I. 3, 8 (Terr. V.I. 1999) (internal citation omitted). A single act may constitute "transacting" of business. *Id.* Relevant to whether North West "transacts" business in the territory, Adams' Complaint alleges that: "North West . . . is a company incorporated in Delaware with its principal place of business in Bellevue, Washington and which does business in the United States Virgin Islands" and "[North West] provides merchandising, purchasing, human resources training, and other services and support to CULUSVI." Compl. at ¶¶ 3, 5.

 Reading the Complaint in light most favorable to the plaintiff, the Court finds that Adams' original Complaint pleads no facts that could reasonably satisfy subsection (a)(1) of the Virgin Islands' long-arm statute. While Adams' complaint states that North West "does business" in the Virgin Islands, and provides various "service and support" to CULUSVI, she does not state facts that plausibly support that her claim for negligence "arises" out of these transactions necessary to satisfy subsection (b) of the statute. Likewise, as for section 4903(a)(3), Adams has plead no facts to demonstrate that North West has "caused tortious injury by an act or omission in this territory." Accordingly, the Court finds that Adams' original complaint fails to satisfy the requirements of the Virgin Islands long-arm statute, and accordingly, it does not make out a prima facie case of personal jurisdiction over North West. *See Molloy*, 56 V.I. at 182 n.7 ("Because we agree with the Superior Court that the [plaintiffs] failed to prove the requirements to exercise personal jurisdiction over [defendant] under the Virgin Islands long-arm statute for Counts II-V, we are not required to review whether the [plaintiffs] provided the necessary showing for those counts to exercise jurisdiction under the Due Process Clause of the Fourteenth Amendment."); *see also Divine Destinations, LLC v. Destination Bon Voyage, LLC*, 2015 V.I. LEXIS 60, *15-16 (V.I. Super. Ct. June 1, 2015) ("Since Plaintiff has pled

no facts upon which this Court could conclude that the pertinent subsections of the Virgin Islands long arm statute apply to [Defendant], Plaintiff has not established a prima facie case for the exercise of personal jurisdiction over this Movant."). Thus, the Court would grant North West's motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2); however, as discussed below, Adams' amended complaint cures the deficiencies regarding personal jurisdiction in her original complaint. Accordingly, the motion to dismiss as to FED. R. CIV. P. 12(b)(2) will be denied as moot.

### 2. North West Did Not Consent to Jurisdiction When It Defended this Matter in the District Court

In her opposition to North West's motion to dismiss, Adams alleges that North West waived its right to assert personal jurisdiction as a defense because it "participated fully" in discovery while this matter was pending in the District Court. Pl's Opp. to Def. NW Mot. to Dismiss at 7-9. North West argues that its appearance in the District Court, "a prior litigation" in the Virgin Islands, did not constitute a waiver of personal jurisdiction in the Superior Court, because consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum. Rep. In Supp. of Def. the North West Company (International), Inc.'s Mot. to Dismiss Pl's Compl. at 3-6. In the alternative, North West argues that, even if the Court does not apply the aforementioned principle, its participation in the District Court action was "limited, was focused on the complete absence of a nexus between North West's activities and Adams' cause of action, and, under no circumstance, could be described as 'extensive.' " *Id.* at 6-7.

 At issue is whether North West has engaged in activities that would constitute a waiver of the defense of personal jurisdiction before this Court. "Jurisdictional objections to the court's power over the person are waived unless timely asserted by motion or answer." *Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969). A party is deemed to have consented to personal jurisdiction over it "if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *Fid. & Cas. Co. v. Tex. E. Transmission Corp. (In re Tex. E. Transmission Corp.)*, 15 F.3d 1230, 1236 (3d Cir. 1994). Because courts recognize a "strong policy to conserve judicial time and resources . . . preliminary matters such as . . . personal jurisdiction . . .

should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999), *quoting Wyrough & Loser, Inc. v. Pelmor Lab., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967). Federal Rule of Civil Procedure 12(b) states that: "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive leading or in a motion." However, the Federal Rules provide that, "a party waives [the lack of personal jurisdiction] defense by failing to either make it by motion under this rule; or include it in a responsive pleading[.]" FED. R. CIV. P. 12(h).

North West correctly asserts the widely-recognized principle that a party's appearance in a prior litigation in a forum does not comprise a waiver of personal jurisdiction in a subsequent matter. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*, 937 F.2d 44, 50 n.5 (2d Cir. 1991); *Fesniak v. Equifax Mortg. Servs. LLC*, 2015 U.S. Dist. LEXIS 66238, *16 (D.N.J. May 20, 2015); *EEOC v. Vicksburg Healthcare, LLC*, 2014 U.S. Dist. LEXIS 132700, *17 (S.D. Miss. Sept. 22, 2014); *Brainware, Inc. v. Scan-Optics, Ltd.*, 2012 U.S. Dist. LEXIS 77337, *10 (E.D. Va. May 9, 2012); *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13 (D.D.C. 2014), *appeal dismissed*, 2014 U.S. App. LEXIS 18148 (D.C. Cir. Aug. 11, 2014). Many courts, including the Ninth Circuit Court of Appeals and the Southern District of New York, have held that this principle still applies to matters that are very closely related. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835-36 (9th Cir. 2005); *see also In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 107225, *183 (S.D.N.Y. Aug. 4, 2015); *In re Cathode Ray Tube CRT Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009 (N.D. Cal. 2014) ("[E]ven if actions are closely related — as when different plaintiffs sue the same defendant in different cases but based on the same facts — defendants do not waive their personal jurisdiction defense by raising it only in a later action, so long as the defendant is not independently seeking affirmative relief in the same court concerning the same transaction or occurrence.").

Regardless of whether the Court were to view North West's participation in the District Court case as an extension of this matter or as a prior case (a "closely related" case, as this matter implicates the same causes of action, the same plaintiff, and one of the same defendants), the Court finds that North West did not consent to jurisdiction in this forum by participating in discovery in the District Court. The record indicates

that North West raised lack of personal jurisdiction as an affirmative defense in its answer in the District Court. Reply in Supp. of Def. the North West Company (International), Inc.'s Mot. to Dismiss Pl.'s Compl., Ex. 2. Likewise, North West's first response to Adams' complaint in this Court was its motion to dismiss. In *Lechoslaw v. Bank of Am., N.A.,* 618 F.3d 49, 55 (1st Cir. 2010), the First Circuit Court of Appeals held that an out-of-state defendant did not waive its personal jurisdiction defense when the defendant included lack of jurisdiction as a defense in its answer, filed its motion for leave to file a Rule 12 motion late, propounded discovery requests, negotiated extensions to the time required to respond to the discovery requests, and solicited a confidentiality agreement before filing its Rule 12 motion. Similarly, the Third Circuit Court of Appeals generally looks to whether a defendant has actively sought affirmative relief within the case, such as by filing a motion for summary judgment on a counterclaim, *Bel-Ray Co.,* 181 F.3d at 443, or actively participating in the adjudication of a claim for a temporary restraining order against it. *See Wyrough,* 376 F.2d at 547. Here, the Court finds that, because North West properly raised lack of personal jurisdiction as an affirmative defense in its answer and did not engage in the sort of activity on the merits that would comprise "extensive litigation" in this forum, it did not consent to jurisdiction in this forum through its participation in the District Court case. However, as with the Defendants' 12(b)(6) motions, in the interest of justice, the Court will grant Adams leave to file a curative amendment to address her Complaint's deficiencies regarding the exercise of personal jurisdiction over North West.

### C. Adams' Motion to Amend her Complaint

 ██ Citing an "abundance of caution" in her opposition to North West's motion to dismiss, Adams seeks to amend her complaint to "add facts learned during discovery [in the District Court] that support personal jurisdiction over [North West]," and to supplement "her allegations showing North West's control over the Cost-U-Less store in St. Croix, the place of Plaintiff's accident." Mot. to Am. Compl. 1. "Superior Court Rule 8 governs amendments to pleadings in Superior Court proceedings." *Santiago v. V.I. Housing Authority,* 57 V.I. 256, 275 (V.I. 2012). Superior Court Rule 8 provides that:

The court may amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at trial. If a party is surprised as a result of such amendment, the court shall adjourn the hearing to some future day, upon such terms as it shall think proper.

SUPER. CT. R. 8. Rule 8 places the amendment of pleadings within the "sound discretion" of the Court. *Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011). Jurisprudence surrounding the application Federal Rule of Civil Procedure 15(a) has typically guided the Superior Court in the application of its discretion. *See, e.g., Peters v. V.I. Water & Power Auth.*, 58 V.I. 49 (V.I. Super. Ct. Jan. 8, 2013); *George v. Wenhaven, Inc.*, 2012 V.I. LEXIS 66 (V.I. Super. Ct. Sept. 28, 2012); *Tutein v. Parry*, 48 V.I. 101 (V.I. Super. Ct. 2006). Under Rule 15(a) of the Federal Rules of Civil Procedure, courts should freely grant leave to amend a complaint, "when justice so requires." This has been interpreted as a liberal standard guided by the policy that claims should be tested on their merits. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.' " *Id.* As stated by the Third Circuit, "prejudice to the nonmoving party is the touchstone for denial of amendment." *Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978). Delay alone, without prejudice from delay, is an insufficient reason for a court to deny a motion to amend. *Id.*

In their opposition to Adams' motion to amend, Defendants argue that Adams' motion must be denied as futile because Adams' amended complaint would still fail to make out a prima facie case of personal jurisdiction over North West; Adams unduly delayed in filing her amendment; and North West would be prejudiced if Adams is allowed to amend. Additionally, Defendants challenge Adams' motion to amend on a factual basis. The Court discusses these arguments in turn.

## 1. Adams' Amended Complaint Would Not be Futile Because It Alleges Facts That Support a Finding of Personal Jurisdiction Over North West

 Defendants argue that the Court should deny Adams' motion to amend because Adams' first amended complaint "still does not make out a *prima facie* case to support the exercise of personal jurisdiction over North West," and her amendments are thus futile. Def's Opp'n to Pl's Mot. to Amend Compl. at 3. "In determining whether an amendment would be futile, the court considers whether it would survive a motion to dismiss." *Jones v. L.S. Holdings, Inc.*, 2010 V.I. LEXIS 10, *3 (V.I. Super. Ct. Feb. 25, 2010). The Supreme Court of the Virgin Islands has upheld this Court's denial of a motion to amend a complaint as futile when the relief requested in the amended complaint was not authorized under Virgin Islands law. *Harvey v. Christopher*, 55 V.I. 565, 577 n.8 (V.I. 2011). It has also held that a motion to amend was futile when the movant sought to correct non-waivable statutory jurisdictional conditions that barred her lawsuit entirely. *Brady v. Cintron*, 55 V.I. 802, 820 (V.I. 2011). Accordingly, in order to determine whether Adams' motion should be dismissed as futile, the Court examines whether her amended complaint pleads facts sufficient to establish personal jurisdiction over North West.

 Adams argues that she has satisfied the requirements of the Virgin Islands' long-arm statute, specifically subsections (a)(1) and (a)(3), which confer personal jurisdiction over a person who "transact[s] any business in this territory" and/or "caus[es] tortious injury by an act or omission in this territory." 5 V.I.C. § 4903(a)(1), (a)(3). Adams' amended complaint includes the following facts to establish that North West has transacted business and caused tortious injury in the Virgin Islands: North West employs the workers at the Cost-U-Less store in St. Croix and pays these employees from its payroll; North West invests millions of dollars into the retail operations of its Cost-U-Less store on St. Croix; North West spends millions of dollars to purchase local goods and services in St. Croix; North West's Employment Manual governs the employment policies and procedures and also provides instruction and training on the use of forklifts by its Cost-U-Less employees on how to carry and place merchandise on shelves in the store; and North West selects and ships products from various manufacturers and distributors to the Cost-U-Less store in St. Croix to customers in St. Croix. Pl's First Am. Compl. ¶¶ 6-10. Accepting Adams' factual allegations as true, as is required under a

12(b)(2) analysis, the Court finds that Adams' amended complaint satisfies subsections (a)(1) and (a)(3) of the Virgin Islands long-arm statute. Additionally, construed in the light most favorable to the plaintiff, Adams' amendment serves to establish that her claim arises from North West's acts in the territory, if the policies, procedures, instruction, and training created the condition that caused the pallets to fall onto Adams. Accordingly, the Court finds that Adams has satisfied section (b) of the Virgin Islands long-arm statute.

██ Adams must additionally demonstrate that this Court's exercise of jurisdiction over North West would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See generally, Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). To determine whether constitutional due process is satisfied, the Court analyzes whether the defendant possesses sufficient minimum contacts with the Virgin Islands to be required to defend in the territory. *See In re Najawicz*, 52 V.I. 311, 336 (V.I. 2009). The Court may demonstrate this in two ways: Firstly, this Court may find that it has general jurisdiction, or the right to hear all cases against a defendant regardless of where or how they arise, if it finds that defendant has continuous and systematic contact with the forum. *Molloy*, 56 V.I. at 181. Alternatively, the Court may exercise specific personal jurisdiction — jurisdiction on a claim-by-claim basis — over a defendant if it finds that the defendant has the requisite minimum contacts with the forum and the claim arises out of those contacts with the forum. *Id.* If the Court determines that there are sufficient contacts with the forum to warrant jurisdiction under either standard, it must still determine that exercising jurisdiction will comport with "fair play and substantial justice." *Id.* at 181-182. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

 In her reply in support of her motion to amend, Adams argues that her amended complaint demonstrates that North West has continuous and systematic minimum contacts with the Virgin Islands sufficient for the Court to exercise general jurisdiction over it. A finding of minimum contacts sufficient to support general jurisdiction over a defendant requires that "there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum . . . thus

invoking the benefits and protections of its laws." *In re Najawicz*, 52 V.I. at 337 (internal citation omitted). This requirement exists to ensure that a defendant will not be required to appear in a forum due to "random, fortuitous, or attenuated contacts." *Id.* "For a non-resident business entity, the contacts with the Virgin Islands should form a central part of the company's business." *Molloy*, 56 V.I. at 183. Adams' amended complaint includes the following facts to establish that North West has continuous and systematic contact with the Virgin Islands: (1) North West does business as Cost-U-Less in the United States Virgin Islands; (2) North West provides merchandising, purchasing, human resource support, training, and other services and support to Cost-U-Less; and (3) North West employs workers at the Cost-U-Less store in St. Croix, and pays these employees from its payroll. Pl's First Am. Compl. ¶¶ 3, 5-6. The Court finds that these allegations demonstrate, at this procedural stage, that North West's contacts with the Virgin Islands, by way of its inextricable involvement with Cost-U-Less' operations, are continuous and systematic and in no way are random, fortuitous, or attenuated. However, the Court does not find that Adams' amended complaint demonstrates that North West's contacts with the Virgin Islands form a central part of the company's business. Accordingly, the Court does not find that Adams' first amended complaint demonstrates that the Court may exercise general jurisdiction over North West.

In the alternative, Adams argues that her amended complaint pleads facts sufficient to indicate that the Court may exercise specific personal jurisdiction over North West in this matter because, on the face of her complaint, Adams' claim arises out of the minimum contacts that it has with the Virgin Islands. The Court applies a three-part test to determine whether it may exercise specific jurisdiction over a defendant: (1) the defendant must have purposefully directed its activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; (3) if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *Molloy*, 56 V.I. at 183 (internal quotations omitted). Adams' amended complaint includes the following facts to establish that North West's alleged negligence arose out of its contacts with the Virgin Islands: (1) North West provides merchandising, purchasing, human resource support, training, and other services and support to Cost-U-Less; (2) North West employs workers at the Cost-U-

Less store in St. Croix, and pays these employees from its payroll; and (3) North West's Employment Manual governs the employment policies and procedures of its Cost-U-Less employees in St. Croix and also provides instruction and training on the use of forklifts by its Cost-U-Less employees on how to carry and place merchandise on shelves in the store. Pl's First Am. Compl. ¶¶ 5-6, 9.

 The Court finds that the facts alleged in Adams' amended complaint successfully establish that the Court may exercise specific personal jurisdiction over North West in this matter. Firstly, the amended complaint indicates that North West has purposefully directed its activities in merchandising, purchasing, human resource support, training, retaining and paying employees, and governing employment procedures for Cost-U-Less in the Virgin Islands. Secondly, this litigation arose out of the defendants' allegedly stacking pallets in a negligent manner that caused them to fall and injure Adams, which, accepting Adams' allegations as true, arose at least in part from North West's deficient policies in its Employee Manual and training, instructing, and retaining employees. Finally, to determine whether Adams' complaint pleads that the exercise of jurisdiction over North West would comport with principles of fair play and substantial justice, the Court must analyze, "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Molloy*, 56 V.I. at 184. "[J]urisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). However, a defendant who possesses minimum contacts with the forum state and seeks to defeat jurisdiction must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477.

In Defendants' opposition to the motion to amend filed on October 14, 2014, North West argues that appearing in court in the Virgin Islands would impose a burden upon it so great as to violate principles of fair play and substantial justice under the Fourteenth Amendment. Specifically, North West argues that it is a Delaware company doing business in

Washington State, and that, despite that CULUSVI is a "distinct subsidiary corporation," it would not be "just or expected" to be haled into a Virgin Islands court 3,800 miles away. Def.s' Opp'n to Pl's Mot. to Am. Compl. at 16. North West argues that being forced to defend this case in the Virgin Islands would cause a disruption on North West's business operations, "which would not otherwise involve the U.S. Virgin Islands," and impose potentially significant travel and lodging costs. *Id.*

 The Court acknowledges that defending this suit in the Virgin Islands will cause some inconvenience to North West, as it does for all stateside defendants. However, the face of Adams' amended complaint indicates that North West is a large corporation that has purposefully availed itself of the benefits of doing business in the Virgin Islands. Accordingly, due to North West's resources and intentional business activity in the Virgin Islands, the Court does not find this inconvenience to be so prohibitive that North West would be at a "severe disadvantage" against its singular opponent in this matter. Furthermore, regarding the forum territory's interest in litigating this matter, the alleged incident occurred at a Cost-U-Less store on St. Croix, to a resident of St. Croix, and the Courts of the Virgin Islands accordingly possess a cognizable interest in hearing cases regarding allegations of harm to Virgin Islands residents. Adams — who is not a publicly-traded corporation but an individual — undoubtedly has an interest in litigating this matter in the Virgin Islands, as her complaint indicates that she lives here and the incident occurred here. Finally, the interstate judicial system and the shared interest of the several states certainly hold an interest in seeing that, absent extraordinary circumstances, defendants be required to defend in the appropriate forum.

Accordingly, because Adams' amended complaint successfully alleges that North West purposefully directed its activities in the Virgin Islands, this litigation arises from these activities, and the exercise of jurisdiction otherwise comports with fair play and substantial justice, the Court finds that Adams has successfully pled that the Court may exercise specific personal jurisdiction over North West. Accordingly, on this ground, the Court will not deny Adams' motion to amend as futile.

The Court notes, however, that while Adams' amended complaint pleads facts that, if true, establish personal jurisdiction over North West, the amended complaint does not cure the deficiency in establishing the element of breach of duty under a claim of negligence as to North West

457

or CULUSVI. Accordingly, Adams' amended complaint fails to state a claim for negligence; however, because the Court had not ruled on Defendants' 12(b)(6) motions before she filed her motion to amend, Adams could not have known of this deficiency, and accordingly, she will be granted leave to file a curative amendment.

### 2. Allowing Adams to Amend her Complaint Will Not Impose Undue Delay Upon the Court

 As an alternative basis, North West also alleges that Adams' motion to amend should be denied due to "unreasonable delay," as "Adams could have included every single allegation that appears for the first time in her Amended Complaint in her Original Complaint." Def.s' Opp'n to PII's Mot. to Am. Compl. at 16-17. "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court[.]" *Pedro v. Ranger Am. of the V.I.*, 63 V.I. 511, 523 (V.I. 2015), *quoting Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Delay may also be "undue" when, "a movant has had previous opportunities to amend a complaint." *Id.* at 523. The case that North West relies upon in asserting that Adams' delay in filing her motion to amend is "undue" held that delay was undue when:

> This proposed amendment was requested three years after the action was filed and nearly two years after the complaint was amended for the. second time. Most of the facts were available to plaintiff Savin before she filed her original complaint in 1986, and probably all of them were available when she amended her complaint in May and August of 1987 and when she filed her RICO case statement in September of 1987. Over the three-year period between the filing of her original complaint and the filing of her motion to amend, Savin had numerous opportunities to correct any deficiencies in her RICO claim but failed to take advantage of them. Her delay was unreasonable.

*Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). The Court does not find that Adams' current motion to amend places such an unwarranted burden on the Court. Adams filed her motion to amend on August 29, 2014, just under three months after she filed her Complaint on June 6, 2014. She filed her motion to amend, in an "abundance of caution," just two weeks after

458

North West filed its motion to dismiss on August 13, 2014, therein addressing the jurisdictional deficiencies alleged by North West. While the Court acknowledges that Adams almost certainly had knowledge of the facts alleged in the amended complaint regarding North West's control over the activities of Cost-U-Less on St. Croix, the Court finds that this, standing alone, does not mean that her motion to amend caused an "undue delay" in these proceedings. Indeed, as North West did not challenge the Virgin Islands' jurisdiction over it by motion in the District Court case, Adams likely did not have reason to know that it would challenge jurisdiction in the present matter. Accordingly, the Court finds no undue delay in Adams' motion to amend, and will not disallow her amendment on this ground.

### 3. Adams' Amendment Will Not Prejudice North West

North West also alleges that it will be prejudiced if Adams is allowed to amend her complaint. An amendment to a complaint is "prejudicial" if it places an unfair burden on the opposing party. *Pedro v. Ranger Am. of the V.I.*, 63 V.I. at 523 (V.I. 2015). In arguing that allowing Adams' amendment would be "*per se* prejudicial," as it may require North West to defend this suit on the merits, North West primarily cites the same arguments as it did in regards to whether the exercise of personal jurisdiction over it comports with the Fourteenth Amendment: that North West's connection to this case is "attenuated," that Adams has not plausibly alleged that North West owes her any duty of care under the law, and that the travel required to defend this case would present a major burden and inconvenience to North West. Def.s' Opp'n to Pl's Mot. to Am. Compl. at 17-18. The Court is not persuaded by North West's claims of prejudice. The standard for allowing a plaintiff to amend a complaint requires that leave to amend be "freely given," and as discussed above, the Court does not find that, on the face of Adams' complaint, the burden imposed upon North West by being required to defend this suit in the Virgin Islands is "unfair."

### 4. Because Defendants Have Asserted a Factual Attack to Adams' Amended Complaint, the Court will Grant Leave for the Parties to Conduct Jurisdictional Discovery

In their opposition to Adams' motion to amend, Defendants state that the allegations in Adams' amended complaint "are contradicted in whole" by an affidavit attached to North West's Motion to Dismiss. Def.s'

Opp'n to Pl's Mot. to Am. Compl. at 2. Defendants allege that this affidavit "establishes that North West scrupulously adheres to corporate formalities in its dealings with CULUSVI, Inc. and does not have minimum contacts with this jurisdiction needed for personal jurisdiction." *Id.* at n.2. Adams attached multiple exhibits to bolster the claims to support the facts she presents in her opposition to North West's motion to dismiss and her motion to amend. However, in Defendants' opposition to Adams' motion to amend, filed on October 14, 2014, and North West's motion to strike Adams' reply in support of her motion to amend or, in the alternative, motion for leave to file a sur-reply, filed on January 7, 2015, North West attacks Adams' assertion of jurisdiction on factual bases including, of interest to the Court, that the exhibits that Adams filed do not establish that North West possessed the requisite minimum contacts to support a finding of personal jurisdiction at the time of the alleged incident on or about September 9, 2013. Because Defendants have levied a pre-answer challenge to personal jurisdiction based on the facts pled in Adams' amended complaint, the Court will grant North West's motion to file a sur-reply,[10] consider the arguments it makes therein, and additionally grant the parties leave to conduct jurisdictional discovery on the issue of whether this Court may exercise personal jurisdiction over North West. *See Molloy*, 56 V.I. at 172-73.

Accordingly, because North West has not demonstrated that Adams' amendment to her complaint would be futile, prejudicial, or cause undue delay, the Court will grant Adams' motion to amend her complaint. To clarify, while the Court finds that Adams' amended complaint would survive a motion to dismiss on the grounds that the complaint alleges facts that establish personal jurisdiction over North West, the amended complaint does not correct the deficiencies pertaining to alleging a plausible claim for negligence. *See supra* Part II. A-B. Accordingly, Adams is still granted leave to cure the deficiencies in her complaint as they relate to its failure on that issue. Additionally, because Defendants have levied factual attacks to the facts asserted in Adams' amended complaint, the Court will grant the parties leave to conduct jurisdictional discovery on the issue of whether Adams may exercise personal jurisdiction over North West after Adams files an amended complaint that

[10] The Court will accordingly deny the portion that moves to strike Adams' reply in support of her motion to amend her complaint.

cures the deficiencies discussed in Section II of this Memorandum Opinion.

## III. CONCLUSION

Because Adams' original complaint fails to state a claim for negligence, the Court will grant CULUSVI's and North West's motions to dismiss. However, the Court will grant Adams leave to file a curative amendment. Additionally, the Court will grant Adams' motion to amend her complaint. Finally, because North West has challenged the factual and legal bases underlying Adams' assertion of personal jurisdiction over North West, the Court will grant North West's motion to strike or file a sur-reply in part, and grant the parties leave to conduct jurisdictional discovery to determine whether this Court may exercise personal jurisdiction over North West. An appropriate Order follows.